UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN L. ANGUS on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John L. Angus on behalf of himself and all others similarly situated, for his Class Action Complaint against defendant Lincoln National Life Insurance Company ("Lincoln"), states as follows:

**NATURE OF THE ACTION**

1. This is a class action brought on behalf of Plaintiff and similarly situated owners of certain life insurance policies issued or insured by Lincoln. Plaintiff seeks to represent a class of Lincoln policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges.

2. Plaintiff, along with numerous other Lincoln policyholders, has been forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts. The subject Lincoln policies specify that "Changes in cost of insurance rates will be based on changes in future expectations as to mortality experience and expenses." The policies further state that

1

Lincoln "will consider changes in the cost of insurance rates at least every five years and when cost of insurance rates for new issues change." The relevant provision is quoted below in its entirety:

> **Cost of Insurance Rates** – The monthly cost of insurance rate is based on the policy year and the policy year and the sex and rating classes of the Insureds. <u>Monthly cost of insurance rates, which are determined by us based on future expectations, include charges for mortality experience, amortized sales charges, and other administrative charges. Changes in cost of insurance rates will be based on changes in future expectations as to mortality experience and expenses.</u> Any change in cost of insurance rates will apply to all individuals of the same classes as the Insureds. <u>We will consider changes in the cost of insurance rates at least every five years and when cost of insurance rates for new issues change.</u>

Under this policy language, if Lincoln's expectations of future mortality experience and/or expenses improve, COI rates must reflect this improvement.

3.   Nationwide mortality experience has *improved* significantly over the past several decades. Lincoln's expectations as to future mortality experience have likewise substantially changed in its favor. Insureds are living longer than Lincoln originally anticipated when the policies at issue were first priced, which means that Lincoln collects more COI and other charges and pays out death benefits later than originally anticipated. That is one reason that Lincoln has repeatedly stated in regulatory filings that mortality experience has been substantially better than it expected, and has continually updated its mortality expectations to reflect this improvement.

4.   Expenses associated with universal life policies, including "amortized sales charges, and other administrative charges," are a minor component of COI rates and have not materially changed, let alone to a degree that would offset the substantial improvement of expectations as to future mortality experience that Lincoln has already enjoyed. The largest expense is sales charges, which are used to pay agent commissions, but those are typically contractually fixed at issue and do not vary from original expectations.

5. Despite this vastly improved mortality experience, and no offsetting deterioration in expenses, Lincoln has not lowered the COI rates it charges its customers as required by the policies. For Plaintiff, Lincoln has in fact has routinely increased COI rates year-over-year. This is consistent with Lincoln's (unethical and unlawful) company-wide practices. Lincoln and its affiliates have been one of the most active companies in increasing COI rate scales on other universal life ("UL") policies that allow for consideration of non-mortality and non-expense factors like "investment income" and "persistency," imposing numerous COI rate hikes in the past seven years that have netted Lincoln hundreds of millions of dollars.[1] Lincoln has been sued multiple times for these unlawful practices,[2] but none of those cases have encompassed the specific policies at issue here.

6. Despite these lawsuits, it is apparent that Lincoln continues to wrongly construe its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to *increase* COI rates if mortality experience and expenses are worse than anticipated, but not requiring it to *decrease* COI rates in the face of years and years of improved mortality experience and no offsetting deterioration in expense experience. This interpretation has already been rejected in court; it is unethical; and is contrary to the plain language of the policies. As a result of this misconduct, Plaintiff seeks monetary relief for the COI overcharges that Lincoln has wrongly

---

[1] *See Hanks v. Voya Retirement Ins. & Annuity Co. of N.Y. et al.*, No. 16-cv-6399-PKC; In re: Lincoln National COI Litigation, No. 2:16-cv-06605-GJP (E.D. Pa.); In re: Lincoln National 2017 COI Rate Litigation, No. 2:17-cv-04150-GJP (E.D. Pa.).

[2] *See Lincoln Nat'l Life Ins. Co. v. Bezich* ("*Lincoln COI*"), 33 N.E.3d 1160, 1171 (Ind. Ct. App. 2015) (noting "the absurdity of Lincoln's own interpretation of the COI rate provision, which is that the [policy] *allows Lincoln to unilaterally increase rates* on customers to reflect a change in mortality factors but offers no parallel commitment to decrease rates despite an overwhelming improvement in mortality"; this decision was subsequently vacated and the case settled for relief valued at $171.8 million) (emphasis in original); *TVPX ARS Inc., et al. v. Lincoln National Life Ins. Co.*, No. 2:18-cv-02989-RBS (E.D. Pa.) (pending class action involving policies that state that COI rates will be determined based on expectations of future mortality experience); *Iwanski v. First Penn Life Ins. Co.*, No. 18-2989-RBS (E.D. Pa.) (pending class action against Lincoln's subsidiary First Penn-Pacific involving the same language); *Vida v. Lincoln Life & Annuity Company of New York*, Case No. 19-cv-6004 (S.D.N.Y.) (pending certified class action against Lincoln affiliate involving similar language).

imposed on Plaintiff and all of its similarly situated customers who each own policies with the same language at issue here.

## THE PARTIES

7. Plaintiff John L. Angus owns a Flexible Premium Adjustable Life Insurance Policy, policy number 659002722, insuring the lives of his parents John F. Angus and Jean R. Angus, which was issued by Lincoln's predecessor entity Chubb on January 28, 1995 and currently has a face value of $220,000 (the "Angus Policy"). At issuance, John F. Angus was age 69, and Jean R. Angus was 68.

8. Defendant Lincoln National Life Insurance Company is a corporation organized and existing under the laws of Indiana, having its principal place of business in Radnor, Pennsylvania. Lincoln is a wholly owned subsidiary of Lincoln National Corporation, which has its principal place of business in Radnor, Pennsylvania.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

10. This Court has personal jurisdiction over Lincoln because it has its principal place of business in Radnor, Pennsylvania.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) because the events giving rise to Plaintiff's causes of action occurred in this District, including Lincoln's COI rate overcharge.

**FACTUAL BACKGROUND**

A. **Cost of Insurance**

12. Universal and variable life policies combine death benefits with a savings or investment component, often known as the "account value" or "accumulated value." One benefit of UL policies is that they permit policyholders flexibility in the amount and timing of premiums necessary to keep the policies in-force. Unlike other kinds of whole life insurance that require fixed monthly premium payments, the premiums required for UL policies need only be sufficient to cover the COI charges and certain other specified expenses. The COI charge is deducted from the policy value (i.e., the savings component) of the policy every month, so the policyholder forfeits the COI charge entirely to the insurer. Any premiums paid in excess of COI charges and other charges are applied to the account value. These excess premiums earn interest at the credited rate. This structure is beneficial because it allows policyholders to set the savings level within the policy and earn a return that exceeds a specified minimum.

13. The COI charge is supposed to be the insurer's cost of providing mortality coverage. The COI rate to determine this charge is designed to fluctuate depending on the insurer's projected mortality experience. The size of the COI charge is highly significant to universal life policyholders. First, it dictates the minimum amount of money that must be paid to keep a policy in force. Second, high COI rates can quickly diminish account value and reduce the amount of money on which interest can be earned. Absent a secondary guarantee, if the policy value diminishes such that COI charges and certain other specified expenses can no longer be deducted, then the policy will go into grace and, if no additional premiums are paid after adequate time provided by an accurate grace notice, the policy may lapse.

14.     The Angus policy has the following language about how the rate used to calculate the COI charge – known as the "Cost of Insurance Rate" – will be determined:

> **Cost of Insurance Rates –** The monthly cost of insurance rate is based on the policy year and the policy year and the sex and rating classes of the Insureds. Monthly cost of insurance rates, which are determined by us based on future expectations, include charges for mortality experience, amortized sales charges, and other administrative charges. Changes in cost of insurance rates will be based on changes in future expectations as to mortality experience and expenses. Any change in cost of insurance rates will apply to all individuals of the same classes as the Insureds. We will consider changes in the cost of insurance rates at least every five years and when cost of insurance rates for new issues change.

15.     The set of policies at issue include all universal and variable universal life policies issued on the policy forms of the Angus policy, and all policies issued by Lincoln stating that "Changes in cost of insurance rates will be based on changes in future expectations as to mortality experience and expenses."[3] These policies are referred to as "COI Overcharge Class Policies."

16.     The COI Overcharge Class Policies at issue are all form policies, and insureds are not permitted to negotiate different terms. The Class Policies are all contracts of adhesion.

17.     This policy language obligates Lincoln to consider changing its COI rates "at least every five years and when cost of insurance rates for new issues change." It further provides that the *only* factors that the carrier can and must consider when changing COI rates are "expectations as to future mortality experience" and "expenses."

18.     Lincoln has violated both of these policy provisions. The COI rates currently being charged by Lincoln, which Lincoln increases almost every year, are not based in any way on its current mortality and expense expectations, or even its mortality and expense expectations from any point within the past five years. Lincoln's breaches have resulted in COI rates, and COI

---

[3] For avoidance of doubt, the proposed class does not include the policies in the proposed classes in the *TVPX, et al. v. Lincoln National Life Insurance Co.* action, Case No. 18-cv-2989 (E.D. Pa.). Also excluded from the Class are the policies settled in the *Bezich* action against Lincoln, described in more detail below.

charges, that are far in excess of what Lincoln is contractually permitted to charge to cover its mortality risks and expenses.

### B. Improving Mortality and Lincoln's Unlawful Failure to Reduce COI Rates Based on Improvement in Expectations as Future Mortality Experience and Expenses.

19. Lincoln has not decreased its COI rates for COI Overcharge Class Policies, despite the fact that mortality rates have improved steadily *each year* – i.e., mortality risks have gotten *better* for Lincoln over time, as people are living much longer than anticipated when the products were priced and issued. In fact, Lincoln has been routinely increasing COI rates as insureds age, but those new, changed rates do not reflect any of the mortality improvement that has occurred since the policies were issued in the 1990s.

20. Lincoln systematically quantifies its "expectations as to future mortality experience" every year. Lincoln performs experience studies which examine its historical mortality experience and, as a result of that mortality experience, develop predictions of the mortality experience it expects to see in the future. These expectations are explicitly quantified in the form of mortality tables, which are tables showing expected mortality rates, namely probabilities of death for any insured at any point in time. Separate tables are produced to reflect groups with different mortality. For example, mortality tables will usually have separate rates for each gender, smoking status, underwriting classification and duration since issue. Mortality tables are used by actuaries to calculate COI rates, and, if developed properly, are designed to reflect expectations as to future mortality experience.

21. Lincoln has repeatedly acknowledged that, consistent with industry experience, its mortality experience has been better than it expected, allowing the company to reap a substantial financial windfall. For example, in 2016, the president of Lincoln's parent, Lincoln National

Corporation ("LNC"), told investors that even if mortality were "10% worse than [our] mortality expectation," the company would still earn "north of our 12% hurdle rate." He emphasized, "I'd remind you that's a pretty stressed scenario given we're actually seeing results *10% better* using today's model, not 10% worse."

22. In 2017, LNC's Senior Vice President told investors that the company's mortality experience was "consistent, stable and *lower than general population*."

23. Lincoln also acknowledged improving mortality in its 2018 interrogatory statements filed with the National Association of Insurance Commissioners ("NAIC"), which are sworn statements, signed by an actuary. In those statements, Lincoln attested that "mortality experience is predicted to *improve* in the future."

24. And not even the COVID pandemic has changed such predictions. In a presentation made to investors on February 15, 2022, LNC's CEO explained that COVID-related claims were a "pull-forward of mortality events that would have happened over the next 20 to 30 years and *we're not changing our annual estimates of aggregate mortality claims in the Life business because of that*."

25. Nor can Lincoln's refusal to decrease COI rates based on these improved mortality expectations be justified due to changes in the other enumerated factor, expenses.

26. *First*, expenses play a much smaller role in COI rates than mortality. Mortality is by far the biggest driver of COI rates. As the Eleventh Circuit recently noted that "Often referred to as a 'mortality charge,' COI is intended to compensate life insurers for the risk that the insured will die in a given policy year." *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1322 (11th Cir. 2020).

27. **_Second,_** any change in Lincoln's future expectations as to expenses has been dwarfed by the substantial improvement in Lincoln's future expectations as to mortality. In its regulatory filings, Lincoln has repeatedly denied that there has been any substantial deterioration in its expectations as to future expenses. For example, in the required interrogatory statements filed on behalf of Lincoln with the NAIC, in each year from 2015-2020, Lincoln stated that the only increase in expenses (and then only for "some nonguaranteed products") was due to inflation. See 2015 NAIC Interrogatory 3, question 5 ("In the determination of policy cost factors for some nonguaranteed products, it is anticipated that expenses will continue to increase in the future with inflation."). Increases in expenses due to inflation are not sufficient to outpace the substantial improvement in Lincoln's expectations as to future mortality experience.

28. Lincoln also has concealed its wrongdoing: the monthly COI rates used to calculate COI charges are not disclosed to policyholders, nor are Lincoln's future expectations as to mortality and expenses.

## CLASS ACTION ALLEGATIONS

29. This action is brought by Plaintiff individually and on behalf of the "COI Overcharge Class" pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure.

30. The COI Overcharge Class consists of:

All owners of universal life (including variable universal life) insurance policies issued or insured by Lincoln National Life Insurance Company, or its predecessors, that provide for an insurance or cost of insurance charge or deduction where rates or changes in rates are based on two factors: (1) mortality and (2) expenses.

31. Plaintiff reserves the right to seek certification of subclasses, or alternative classes, by original issuing company, product, state of issue, or dates of ownership (collectively, "Subclasses").

32. The COI Overcharge Class and Subclasses do not include policies within the proposed class definition in the *TVPX, et al v. Lincoln National Life Insurance Company* action, Case No. 18-cv-2989 (E.D. Pa.). Nor do they include policies subject to the settlement in the case *Peter S. Bezich v. The Lincoln National Life Insurance Company*, Case No. 02C01-0906 PL-73, in Allen County Circuit Court of Allen County, Indiana, defendant Lincoln, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

33. The COI Overcharge Class and Subclasses consist of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by Lincoln.

34. The claims asserted by Plaintiff are typical of the claims of the COI Overcharge Class and any Subclasses.

35. Plaintiff will fairly and adequately protect the interests of the classes and does not have any interests antagonistic to those of the other members of the classes.

36. Plaintiff has retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

37. Plaintiff requests that the Court afford class members with notice and the right to opt-out of any classes certified in this action.

38. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues. Those common questions that predominate include:

(a) the construction and interpretation of the form insurance policies at issue in this litigation;

(b) whether Lincoln's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class and Subclasses violated the terms of those form policies;

(c) whether Lincoln breached the policy provision stating that "Changes in cost of insurance rates will be based on changes in future expectations as to mortality experience and expenses";

(d) whether Lincoln "considere[d] changes in the cost of insurance rates at least every five years and when cost of insurance rates for new issues change"

(d) whether Lincoln breached its contracts with Plaintiff and members of the class;

(f) whether Lincoln has experienced and expects better future mortality than it assumed at pricing; and

(g) whether Plaintiff and members of the proposed Class are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a) the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b) when Lincoln's liability has been adjudicated, claims of all class members can be determined by the Court;

(c) this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d) without a class action, many class members would continue to suffer injury, and Lincoln's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e) this action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

40. Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein. This claim is brought on behalf of plaintiff, the COI Overcharge Class, and any Subclasses.

41. The Class Policies are binding and enforceable contracts.

42. Lincoln breached the contract by deducting COI charges calculated from COI rates that had not been changed based on changes in Lincoln's expectations as to future mortality experience and expenses. These overcharges include, but are not limited to, the excess COI charges that Lincoln deducted by not reducing COI rates due to improved mortality.

43. Lincoln's failure to decrease COI rates to reflect its improved mortality and expense expectations also violated the contracts' uniform requirement that Lincoln "consider changes in the cost of insurance rates at least every five years and when cost of insurance rates for new issues change."

44. Plaintiff and the COI Overcharge Class and any Subclasses have performed all of their obligations under the policies, except to the extent that their obligations have been excused by Lincoln's conduct as set forth herein.

45. As a direct and proximate cause of Lincoln's material breaches of the policies, Plaintiff and the COI Overcharge Class and any Subclasses have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the COI Overcharge Class (inclusive of any Subclasses) pray for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding Plaintiff and the class compensatory damages;

3. Awarding Plaintiff and the class pre-judgment and post-judgment interest, as well as attorney's fees and costs; and

4. Awarding Plaintiff and the class such other relief as this Court may deem just and proper under the circumstances, including without limitation reinstatement and other equitable relief for policies that were lapsed or surrendered after Lincoln's breach.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the class hereby demand a trial by jury as to all issues so triable.

Dated:  May 13, 2022

Respectfully submitted,

*/s/ Gaetan J. Alfano*
Gaetan J. Alfano (32971)
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Tel:  215-998-1441
Fax:  215-754-5181
gja@pietragallo.com

Steven G. Sklaver (*pro hac vice* to be filed)
Glenn C. Bridgman (*pro hac vice* to be filed)
Michael Adamson (*pro hac vice* to be filed)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel:  310-789-3100
Fax:  310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
madamson@susmangodfrey.com

Seth Ard (*pro hac vice* to be filed)
Ryan C. Kirkpatrick (*pro hac vice* to be filed)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:  212-336-8330
Fax:  212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

*Attorneys for Plaintiff*

*7204449*